**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BASHAR SABBAGH,<br><br>　　　　　*Plaintiff,*<br><br>　　v.<br><br>INSURANCE AUTO AUCTIONS, INC.,<br>*et al.,*<br><br>　　　　　*Defendants.* | No. 24-cv-06742-JKS-CLW<br><br><br><br>*Return Date: August 5, 2024* |

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION TO DISMISS BROUGHT BY DEFENDANTS INSURANCE
AUTO AUCTIONS, INC., GOLDEN STATE AUTOMARKET, LLC,
OLEKSII OMELCHENKO AND DINA OMELCHENKO**

---

Jonathan R. Miller, Esq.
**The Law Firm of Jonathan R. Miller**
100 Overlook Drive, 2nd Floor
Princeton, N.J. 08540
Tel. 609-955-1226
Fax 609-964-1026
jonathan.miller@lawyer.com

*Attorney for Insurance Auto Auctions, Inc.,
Golden State Automarket LLC, Oleksii
Omelchenko and Dina Omelchenko*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...............................................................................ii

LEGAL ARGUMENT .......................................................................................1

    I.     **The Complaint should be dismissed with prejudice** .......................1

        A.    Plaintiff did not buy the Vehicle from GSA at an IAA salvage auction in California, but rather from nonparty Massa Auto in a private transaction in New Jersey. .......................1

        B.    All claims arising from or related to IAA's June 2021 salvage auction are time-barred. .....................................................6

        C.    All fraud-related claims should be dismissed for failure to plead with particularity under Rule 9(b). ......................................6

        D.    Plaintiff fails to allege a consumer fraud claim.............................7

        E.    Plaintiff concedes that his "bailment" claim must be dismissed.........................................................................................8

        F.    Plaintiff concedes that amending the Complaint would be futile. .........................................................................................8

    II.    **Plaintiff has failed to show that any of the Movants are subject to personal jurisdiction in New Jersey**..............................9

    III.    **Plaintiff's request for discovery should be denied** ........................10

CONCLUSION .............................................................................................12

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Basse v. Bank of Am., N.A.*, 2023 U.S. Dist. LEXIS 54434 (D.N.J. Mar. 29, 2023) ............................................................................................................ 11

*Calder v. Jones*, 465 U.S. 783 (1984) ........................................................................ 9

*Klein v. Gen. Nutrition Cos.*, 186 F.3d 338 (3d Cir. 1999) .................................... 7

*Lacroce v. M. Fortuna Roofing, Inc.*, 2017 U.S. Dist. LEXIS 12957 (D.N.J. Jan. 31, 2017) ...................................................................................................... 6

*Malik v. Cabot Oil & Gas Corp.*, 710 F. App'x 561 (3d Cir. 2017) ...................... 11

*Marenbach v. City of Margate*, 942 F. Supp. 2d 488 (D.N.J. 2013) ................... 6

*Marten v. Godwin*, 499 F.3d 290 (3d Cir. 2007) .................................................. 10

*N.J. Mfrs. Ins. Grp. v. Daihatsu Industria E Comercio De Moveis E Aparelhos Electricos Ltda*, 2021 U.S. Dist. LEXIS 209280 (D.N.J. Oct. 29, 2021) .................. 11

*Riachi v. Prometheus Grp.*, 822 F. App'x 138 (3d Cir. 2020) ............................... 7

*Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446 (3d Cir. 2003) ........................ 11

*Tuscano v. Newhouse*, 2011 U.S. Dist. LEXIS 135932 (D.N.J. Nov. 28, 2011) ...................... 6

*Vega v. CarMax Auto Superstores Cal.*, 2018 Cal. App. Unpub. LEXIS 4546, 2018 WL 3216347 (Cal. Ct. App., July 2, 2018), *petition for review denied*, 2018 Cal. LEXIS 7153 (Cal., Sept. 19, 2018) ............................................ 4, 5

### STATUTES

Cal. Revenue & Tax Code § 6094.5 ........................................................................ 2

Cal. Vehicle Code § 24007(a)(1) ........................................................................ 2, 8

Cal. Vehicle Code § 24007.5(a)(1) ..................................................................... 2, 8

N.J.S.A. § 2A:15-59.1 ............................................................................................... 6

N.J.S.A. § 2C:21-4.8(b)(1) ...................................................................................... 3

## <u>LEGAL ARGUMENT</u>

I.   **THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE**

A.   **Plaintiff did not buy the Vehicle from GSA at an IAA salvage auction in California, but rather from nonparty Massa Auto in a private transaction in New Jersey.**

In their Motion, the Movants herein (Insurance Auto Auctions, Inc. ("IAA"), Golden State Automarket, LLC ("GSA"), Oleksii Omelchenko ("Oleksii"), and Dina Omelchenko ("Dina")) show that Plaintiff's claims all fail as a matter of law because he did not buy the Vehicle[1] at a September 2021 salvage auction as alleged in the complaint, nor did he buy the Vehicle from any of the named Defendants, but instead bought it from a nonparty auto dealer, Massa Auto Sales, LLC, in a private transaction in October 2021. In fact, Plaintiff *certified* to this. *See* ECF #2-6 at SABBAGH-6 ("Statement of Buyer").

In his Opposition, Plaintiff contends that he did indeed buy the Vehicle at the June 2021 auction, and that he did so by (1) masquerading as Massa Auto, an LLC of which he is a part-owner; (2) logging in to IAA's online auction using Massa Auto's user id and password; (3) using his personal funds to buy the Vehicle in the name of Massa Auto; (4) misusing Massa Auto's California Resale Certificate to avoid paying California sales tax; (5) fraudulently obtaining a New Jersey title in the name of Massa Auto; and (6) transferring the New Jersey title from Massa Auto to himself.

---

[1] The term "Vehicle" refers to the salvage auto at the heart of this lawsuit, the 2020 Mercedes Benz S560, VIN #WDDUG8DB2LA516999.

But, there are numerous problems with this. *First*, the Complaint says nothing about the June 2021 auction but instead purports that Plaintiff bought the Vehicle at a September 2021 auction, *see* Compl. (ECF #1-2) at ¶ 12. *Second*, the State of California bars private individuals from buying salvage vehicles at auction, except in very limited circumstances not applicable here.  *See* Cal. Vehicle Code § 24007(a)(1), § 24007.5(a)(1).[2] *Third*, Massa Auto certified to the State of California that all purchases at IAA auto auctions in California would be purely for purposes of resale in the regular course of business. *See* Massa Auto Resale Certificate (ECF #2-16) at ¶¶ 3-5. *Fourth*, misuse of a car dealer's resale certificate is illegal in California and amounts to sales tax evasion and fraud. *See id*. at ¶ 6; *see also* Cal. Revenue & Tax Code § 6094.5. Plaintiff would be guilty of a misdemeanor and would also be liable for $5,985.24 in back taxes and penalties.[3] *Fifth*, Plaintiff's own documents show

---

[2] Section 24007(a)(1) of the California Vehicle Code states:

> ***No dealer or person holding a retail seller's permit shall sell a new or used vehicle that is not in compliance with this code*** and departmental regulations adopted pursuant to this code, ***unless the vehicle is sold to another dealer***, sold for the purpose of being legally wrecked or dismantled, or sold exclusively for off-highway use.

(emphasis supplied).

Section 24007.5(a)(1) states:

> No auctioneer or public agency shall sell, at public auction, any vehicle specified in subdivision (a) of Section 24007, which is not in compliance with this code.

[3] Based on the alleged $57,275 purchase price, *see* Compl. at ¶ 12, and the applicable 9.5% sales tax in Los Angeles County, *see* https://www.salestaxhelper.com/our-

*continued* . . .

that the June 2021 auction purchase was made using funds from another nonparty, United Development of America, LLC. *See* Bank Statement (ECF #2-6) at SABBAGH-007. *Sixth*, Plaintiff's own documents conclusively prove that Massa Auto obtained a N.J. title for the Vehicle on 8/12/21 and transferred the title (and the Vehicle) to Plaintiff on 10/25/21, and that Plaintiff did not obtain title in his own name until 10/26/21. *See* N.J. Certs. of Title (ECF #2-6) at SABBAGH-003 to -006. *Seventh*, Plaintiff certified to the State of New Jersey that he bought the Vehicle from Massa Auto on 10/25/21, paying $61,000 plus $4,041.25 in *New Jersey* sales tax. *See id.* at SABBAGH-006. This utterly refutes Plaintiff's contention that he bought the Vehicle from GSA on 9/6/21, paying $57,275, tax-free. *Eighth*, if Plaintiff's aforesaid certification was untrue, he would be guilty of a misdemeanor under New Jersey law. *See id.*; *see also* N.J.S.A. § 2C:21-4.8(b)(1). *Ninth*, the IAA sales receipt confirms that it was Massa Auto that bought the Vehicle from GSA at IAA's June 2021 auction. *See* Buyer Receipt (ECF #2-6) at SABBAGH-002. *Tenth*, the California DMV vehicle transfer and reassignment form as well as IAA's payment remittance and vehicle pullout manifest all further confirm that it was Massa Auto, not Plaintiff, who bought the Vehicle from GSA at IAA's June 2021 auction. *See* ECF #2-12, -13, -14.

In the face of this mountain of undisputed documentary evidence, Plaintiff's contention that it was he who bought the Vehicle from GSA at the IAA salvage

---

locations/california/california-sales-tax-rates/, plus the statutory 10% tax surcharge.

auction is demonstrably, unequivocally, and knowingly false.[4]

Even if Massa Auto acted on Plaintiff's behalf as straw purchaser, that does not change the fact that Massa Auto was the legal buyer and owner of the Vehicle until it sold or otherwise transferred the vehicle title to Plaintiff on 10/25/21, more than four months after the IAA salvage auction — and that Plaintiff has no legal rights against the Movants (nor against the other Defendants).

The opinion in *Vega v. CarMax Auto Superstores Cal.,* 2018 Cal. App. Unpub. LEXIS 4546, 2018 WL 3216347 (Cal. Ct. App., July 2, 2018), *petition for review denied*, 2018 Cal. LEXIS 7153 (Cal., Sept. 19, 2018), neatly illustrates this point. In *Vega*, plaintiff's mother bought a used car for him to use. Three months later, there was an accident, the likely cause of which was a faulty actuator and throttle body assembly. CarMax reimbursed the mother for the car pursuant to California's consumer fraud laws. The son then sued CarMax on his own behalf, asserting claims for fraud, negligence and violation of California's unfair competition law. The core of his complaint was that CarMax and its sales associate told the plaintiff and his mother

---

[4] One might wonder why, since Mr. Sabbagh asserts that he is one of the owners of Massa Auto, he did not arrange for Massa Auto to file this lawsuit. The answer seems to be that Mr. Sabbagh wanted to avoid having to pay an attorney to represent Massa Auto and additionally wanted to seek treble damages for consumer fraud. In any event, if Massa Auto had filed suit, its claims would be time-barred, *see infra*, and would also suffer from the other fatal deficiencies noted herein.

that the car had passed a rigorous inspection when in fact no such inspection had been performed. *Id*. at *1-2.

The appellate court affirmed the dismissal of the complaint, explaining:

> The fundamental flaw in plaintiff's complaint is the one identified by the trial court. ***Plaintiff cannot successfully plead any of his claims because he was not the party who bought the car***. . . . Here, plaintiff did not enter into any transaction with defendants. In the absence of any purchase or other transaction, and in the absence of any legal authority suggesting defendants in these circumstances have duties to persons other than those with whom they transact business, we can find no legal basis for plaintiff's claims.

*Id*. at *9 (emphasis added).

This current matter is no different. Even if Massa Auto used Plaintiff's money to buy the Vehicle for Plaintiff's personal use — while committing sales tax fraud, fraudulently misusing its California resale certificate and illegally bidding at the salvage auction — it is Massa Auto who was the legal buyer and owner of the Vehicle until four months after the auction. Because Plaintiff did not enter into any transaction with any of the Defendants in his personal capacity, all of his claims necessarily fail as a matter of law.

In short, because Plaintiff was not the legal buyer at IAA's salvage auction, *all* of his claims fail as a matter of law and should be dismissed with prejudice and costs, subject to the Movants' right to seek frivolous litigation sanctions pursuant to

New Jersey's Frivolous Litigation Statute, N.J.S.A. § 2A:15-59.1.[5]

### B. All claims arising from or related to IAA's June 2021 salvage auction are time-barred.

Plaintiff contends that he used Massa Auto's name and credentials to bid on and purchase the Vehicle at IAA's June 2021 salvage auction. If so, Plaintiff's participation in that auction was subject to IAA's Auction Rules, ECF #2-15, which impose a one-year limitations period for all claims relating to that auction:

> **F. TIME LIMIT TO PURSUE DISPUTE.** You agree that regardless of any statue or law to the contrary, any claim or cause of action arising out of or related to the Buyer Agreement or your relationship with IAA must be filed within one (1) year after such claim or cause of action arose or be forever barred.

*Id.* at 12.[6]

### C. All fraud-related claims should be dismissed for failure to plead with particularity under Rule 9(b).

As discussed previously, "[a] plaintiff must also 'identify the speaker of allegedly fraudulent statements.'" *Riachi v. Prometheus Grp.*, 822 F. App'x 138, 142 (3d

---

[5] *See Lacroce v. M. Fortuna Roofing, Inc.*, 2017 U.S. Dist. LEXIS 12957, at *9 (D.N.J. Jan. 31, 2017) ("Under any of the sanctions rules, the party seeking sanctions 'must file an independent motion or application, separate from any substantive motion that party files.'") (quoting *Marenbach v. City of Margate*, 942 F. Supp. 2d 488, 496 (D.N.J. 2013)); *but see Tuscano v. Newhouse*, 2011 U.S. Dist. LEXIS 135932 (D.N.J. Nov. 28, 2011) (granting N.J.S.A. § 2A:15-59.1 motion for sanctions together with Rule 12(b)(6) motion to dismiss).

[6] The Auction Rules also provide for mandatory, binding arbitration and that any litigation must be venued in Cook County, Illinois. *See* Auction Rules at 11-12.

Cir. 2020) (quoting *Klein v. Gen. Nutrition Cos.*, 186 F.3d 338, 345 (3d Cir. 1999)). A plaintiff may not take a shotgun approach and attribute the allegedly fraudulent conduct to "defendants": "Rule 9(b) is not satisfied where a plaintiff . . . merely lumps the who, what, when, and where together. . . vaguely attribut[ing] the alleged fraudulent statements to 'defendants' [and] lump[ing] all the defendants together [without] specify[ing] who was involved in what activity." *Id.* (citations omitted).

Plaintiff's opposition fails to address how the Complaint meets this standard. Plaintiffs' claims are raised against all the "Defendants" generically, without specifying who is alleged to have done what.

Plaintiff has also failed to address how there was any misrepresentation or inaccuracy regarding the Vehicle being in "Run and Drive" condition, when IAA's Auction Rules clearly explain that this term does not mean or imply that the Vehicle could be driven cross-country — or even that the Vehicle was roadworthy:

> 7. Any statement that a vehicle runs or drives (such as through an auction notation "run and drive") means that the engine started (either with or without a jump), both the forward and reverse gears engaged and from the starting position, the steering wheel made one full rotation to the right and one full rotation to the left, all at the time of arrival at IAA's facility. ***It is not a representation or warranty that it will do so any time thereafter or that the vehicle is roadworthy.***

*See* Auction Rules (ECF #2-15) at 9 (capitalization omitted, emphasis added).

### D.  Plaintiff fails to allege a consumer fraud claim.

The Movants have explained that Plaintiff's New Jersey Consumer Fraud Act ("NJCFA") should be dismissed on multiple grounds. Plaintiff does not dispute that

basic choice of law principles require the application of California law, which axiomatically precludes Plaintiff's invocation of the NJCFA.

Also, Plaintiff states that he used Massa Auto's login credentials to participate in the IAA salvage auction, and does not dispute that Massa Auto certified that all autos purchased at IAA's salvage auction(s) in California were intended to be resold in the regular course of its business as a car dealer. *See* Massa Auto Resale Certificate (ECF #2-16) at ¶¶ 3-5. This completely refutes Plaintiff's assertion that the salvage auction purchase was a consumer transaction.

In addition, California law prohibits consumers from buying a salvage vehicle at auction. *See* Cal. Vehicle Code § 24007(a)(1), § 24007.5(a)(1). This further refutes any notion that the June 2021 salvage auction sale of the Vehicle was a "consumer transaction" within the meaning of the NJCFA.

### E.   Plaintiff concedes that his "bailment" claim must be dismissed.

The Movants have explained that the Complaint fails to allege the elements of a bailment claim; specifically, it fails to allege the existence of a bailment contract. Through silence, Plaintiff concedes that this claim should be dismissed.

### F.   Plaintiff concedes that amending the Complaint would be futile.

The Movants have explained that, although *pro se* plaintiffs are generally given an opportunity to amend their complaint even if they do not move to amend, this rule does not apply if amendment would be futile. Plaintiff does not address

this at all; he has not filed an amended complaint, nor requested an opportunity to amend, nor contested the Movants' argument that amendment would be futile. Accordingly, the Complaint should be dismissed with prejudice.

## II. PLAINTIFF HAS FAILED TO SHOW THAT ANY OF THE MOVANTS ARE SUBJECT TO PERSONAL JURISDICTION IN NEW JERSEY

The Movants have shown that they are not subject to personal jurisdiction in New Jersey. Plaintiff concedes that general personal jurisdiction does not apply, but argues that the Movants are subject to specific personal jurisdiction because they "participated in the fraudulent auction and sale of a vehicle to a New Jersey resident", which Plaintiff contends were "New Jersey-directed activities."

Plaintiff's argument holds no water. IAA's June 2021 salvage auction was held in California. All alleged representations, actions and omissions occurred in California. Passively allowing residents of New Jersey (and other states) to bid online does not amount to "New Jersey-directed activity." Likewise, any online representations about the Vehicle were made to potential bidders in general, wherever they may be located, and were not specifically directed to New Jersey residents.

Because Plaintiffs' claims hinge on the notion that the Defendants collectively participated in fraud, the *Calder* "effect" test applies. *See Calder v. Jones*, 465 U.S. 783 (1984). Under *Calder*, to establish personal jurisdiction over the Defendants Plaintiff must show, for each Defendant, that

> (1) The defendant committed an intentional tort;
>
> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort;
>
> (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

*Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007).

Here, even if Plaintiff had alleged fraud with the required particularity and specifically alleged tortious conduct by each Defendant — which he fails to do — nothing in the Complaint even remotely suggests that *any* of the Defendants expressly aimed their tortious conduct — i.e., the alleged misrepresentations about the condition of the Vehicle — at New Jersey. Even under the most indulgent reading of the Complaint, nothing therein suggests that New Jersey was the focal point of the alleged misrepresentations.

Plaintiff's opposition entirely ignores *Calder* because Plaintiff has nothing to offer in this regard.

Because the Complaint fails to set forth factual allegations showing that any of the Movants (or indeed any of the other Defendants) are subject to personal jurisdiction under the *Calder* test, the Complaint should be dismissed.

## III.   PLAINTIFF'S REQUEST FOR DISCOVERY SHOULD BE DENIED

Plaintiff appears to argue that, with discovery, he will be able to cure the gross inadequacy of the Complaint. However, the Third Circuit has instructed that

discovery should be denied where the requesting party does not demonstrate with reasonable particularity that such discovery is likely to lead anywhere:

> Jurisdictional discovery is not available merely because the plaintiff requests it. If the plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between [the party] and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained. ***A plaintiff may not, however, undertake a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery***.

*Malik v. Cabot Oil & Gas Corp*., 710 F. App'x 561, 565 (3d Cir. 2017) (emphasis added, citations and quotation marks omitted), cited by *N.J. Mfrs. Ins. Grp. v. Daihatsu Industria E Comercio De Moveis E Aparelhos Electricos Ltda*, 2021 U.S. Dist. LEXIS 209280 (D.N.J. Oct. 29, 2021).

In *Basse v. Bank of Am., N.A.*, 2023 U.S. Dist. LEXIS 54434 (D.N.J. Mar. 29, 2023), the district court denied the plaintiffs' request for jurisdictional discovery because they "fail[ed] to make any allegations which show that [their] alleged injuries were caused by Defendant's activities within New Jersey," and therefore "fail[ed] to meet their 'required threshold showing' that they are entitled to jurisdictional discovery." *Id*. at *21-22 (citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)).

This case is no different. No amount of discovery is going to enable Plaintiff to demonstrate that he purchased the Vehicle from GSA at an IAA salvage auction. The California DMV vehicle transfer and reassignment form, ECF #2-12, together with

the New Jersey Certificates of Title, ECF #2-6 at SABBAGH-03 to -06, conclusively

demonstrate that the true purchaser at auction was Massa Auto.

Likewise, no amount of discovery is going to enable Plaintiff to demonstrate

that New Jersey was the focal point of any of the Defendants' purportedly

fraudulent online misrepresentations.

Plaintiff's request for discovery is a plainly futile delay tactic that would only

result in a palpable waste of time and resources. Plaintiff's request should be

denied.

## **CONCLUSION**

For all the reasons set forth in the Movants' opening and reply briefs, the

Complaint fails to state a claim within the meaning of Rule 12(b)(6), fails to satisfy

the stringent particularity required under Rule 9(b), and should be dismissed with

prejudice. Alternatively, all claims against the Movants should be dismissed under

Rule 12(b)(2).

Respectfully submitted,

Date: July 25, 2024                     /s/ Jonathan R. Miller, Esq.